Good morning, ladies and gentlemen, and good morning, Judge Gould. We will hear the cases in the order in which they appear on the day sheet. You can sit down. And let me remind counsel for appellants that if you wish to reserve some time for rebuttal, you may do so, but you're your own master of your time. You have to keep an eye on the clock and withdraw in order to save your time. So the first case we'll hear is Giovanni Antonio Najera Moreno v. Barr. Garcia v. Barr has been submitted on the briefs. Good morning, Your Honors, and may it please the Court. My name is Andrew Yunkins. On behalf of Petitioner, Your Honor, this case should be remanded to the BIA for instructions consistent with this Court's opinion in Lopez v. Barr. You have to speak up a little bit, sir. Your Honor, this case should be remanded to the BIA for instructions consistent with this Court's opinion in Lopez v. Barr. Lopez v. Barr held that Popa was overruled and that notice to appear that did not contain the required information was insufficient to stop the time bar, despite the fact that a later notice of hearing had been served by the Immigration Court. Which is unlike Pereira. And Pereira, he didn't get the notice at all and, therefore, was lost in absentia. Here, the man actually got notice and went to his hearing and fully represented himself. Doesn't that make a difference? Your Honor, it does not make a difference for purposes of the time stop rule. For purposes of the time stop rule, the notice to appear that's served, or an amended notice to appear that contains all the sufficient information, is sufficient to stop time for purposes of cancellation of removal. Since this Court's opinion in Lopez v. Barr, there are significant additional reasons to doubt the conclusions that Judge Callahan came to. The first is the Kizor v. Wilkie case. Kizor v. Wilkie very clearly defines our deference as being more limited than it perhaps had been applied before. Judge Callahan's dissent specifically says that the Court should have given a greater weight to the opinion of the BIA. Not only that, it says that the Court should have given reasons for why it did not defer to such an opinion. So it sounds like you're arguing about whether Lopez was correct, but we as a three-judge panel can't question whether Lopez was correct, right? So I'm not sure why you're arguing about whether the majority of the dissent was correct. Your Honor, I understand that this case is on for a petition for rehearing. We've – if the Court accepts that Lopez is correct, then the case should certainly be remanded consistent with Lopez as was done in the procedural history in Lopez v. Barr. Well, we might need to hold this case until the petition for rehearing is resolved in Lopez. I could imagine that, but I don't think we as a three-judge panel have any ability to reconsider Lopez, do we? Your Honor, I believe that what you're stating is consistent with the procedural rules of the Court. In that case, it should be remanded based on the clear holding of Lopez for instructions to the BIA consistent with that opinion. We are arguing that the matter was not exhausted – or, excuse me, that the matter was exhausted because of the Court's decision in Pereira that came in an intervening time period. In addition to that, litigation in this matter commenced long before any circuit court had overruled POPA. In Pereira, the immigration judge, I believe in 2013, specifically stated that POPA and other doctrines that are key to POPA were settled law, essentially, that the regulatory scheme that's laid out concerning notices to appear that was discussed in Carr and Githy was sufficient to cure any problems with the initial notice to appear. Thank you, Your Honor. I reserve the balance of my time. May it please the Court. My name is Edward Wiggers, and I represent the Respondent in this matter. Respondent Petitioner expressly withdrew his cancellation claim from the Board's consideration, amounting to, at the very least, a failure to exhaust that claim. And as far as the issues in the case regarding the inspection at the border, the questioning by the Border Patrol agents was part of the routine border procedures. What do you mean he withdrew his cancellation? When did that happen? In his brief to the Board, Your Honor, at the footnote on page 7 of the administrative record, he states that he's no longer appealing the cancellation application. Was that entry on page 7 done before Pereira came down? I'm not sure when he filed it. He filed his brief in 2012, so yes, Your Honor. Well, so it seems like – oh, I'm sorry. Go ahead. Go ahead. Does that make a difference? Well, Your Honor, back during his proceedings in front of the immigration judge, the immigration judge brought up the issue of the NTA not complying with 1229 for purposes of the stop-time rule, putting his counsel that he had throughout his immigration proceedings on notice that that was a potential issue. Counsel actually chose not to pursue the cancellation application in front of the immigration judge based on the fate of the Cuevas-Gaspar rule. However, the immigration judge still addressed it and found that he didn't meet the stop-time requirement. On appeal to the Board in his brief through counsel, Petitioner said he was no longer appealing his cancellation application. But reading this footnote, I mean, it reads to me like I'm pointing out that I'm foreclosed, so I'm going to not waste your time, but I'm acknowledging that otherwise, if it wasn't foreclosed, I would be pressing this. And then it came unforeclosed with Pereira. So I don't understand how you can use this footnote to say he wasn't trying. He just was acknowledging that the law was against him, which it no longer is. Well, he presented no argument on the issue, Your Honor, and under Barron, that's a failure to exhaust. But Pereira changed the law, and isn't there an exception to exhaustion for things that happen later? Petitioner was on notice of this issue, Your Honor, and he chose not to raise it. But even if the Court declines to apply exhaustion, the course would be to wait for the resolution of the en banc petition in Lopez on that issue. Now, regarding the 213, the agents were needed, were obligated to ask questions to determine what happened with the smuggling situation at the border. It was standard border practice, and there were no issues with that. Petitioner never challenged the contents of the I-213, alleging that it was incorrect or that he didn't make the statements. So the immigration judge properly admitted the I-213 into evidence, which established his removability. Petitioner never made a request for administrative closure, so that also is not exhausted. Plus, it fails to comply with matter of evitician, because evitician requires a request. And we filed a 28J letter regarding matter of castro-tum, which calls into question whether administrative closure would even be available in this case anyway. And unless the Court has any further questions, that would conclude our presentation. I have no further questions. But let me ask you this. Your position is that footnote 7, which was written in 2012, Pereira came down when, 2018? Yes, Your Honor. That the frank recognition by the litigant that he doesn't have a claim, which was then the law, should bar him from raising a claim now that the law has been changed? Effectively, he abandoned it, Your Honor, by not presenting it. But he didn't have anything to abandon. He recognized he had a claim that wasn't a claim. I mean, don't we sort of foment the idea of counsel being honest and forthright and civil-minded and abandoning useless claims? Yes, Your Honor. However, the immigration judge did point out the issue underlying Pereira. Petitioner's counsel had the opportunity to address that issue and chose not to. And this specific ordinarily, with the change in the law, yes, the exhaustion would not be an issue if something subsequently changed to that degree. However, this counsel had over a year to identify this issue and raise it, and then chose not to preserve the claim at all in light of the exhaustion. Your Honor, if the AIJ raised the potential Pereira claim before he knew Pereira was coming down, but that might have been an exercise of great caution. But if raised, he would have had to rule against the petitioner, right, under the laws as it stood at that time. Yes, Your Honor, he would have. And that's why we maintain that if you decline to apply exhaustion, you should wait for the resolution of Lopez or abandonment. It's kind of difficult to me. If everybody's acting as well as they can under the law, the AIJ says there's this issue, and the petitioner's attorney says, well, I know, thank you very much for raising the issue, but I don't think there's any real issue here because the law forecloses that claim. They're both acting very honestly and in the best traditions of the profession. And so why shouldn't the petitioner withdraw that issue and stop wasting time? I probably wouldn't have been advancing this argument if he had just left it totally out of his brief. But by affirmatively stating that he was not pursuing his cancellation claim, that's different. But he doesn't really say he's not pursuing it. He just says in light of recent precedent, he spells precedent wrong, but in light of recent precedent decision, he's not contesting his ineligibility, and he cites cases that he thinks are foreclosing him. So I don't see – it's not like he says I'm no longer interested. No, he does not say he's no longer interested, Your Honor. But he does remove the claim from the board's review. That's the basis for our exhaustion. I mean, I would have thought including this footnote helped him show that he was still interested. I mean, if he hadn't mentioned it all, maybe you could say he seems like he's not interested. But he's clearly saying I'm still interested. I'm just foreclosed by precedent. The statute requires Petitioner to present the issue to the board for this Court to be able to review it. He did not do so. That's the crux of our exhaustion. But that's what he's asking for remand for now, right? So he can present it to the board. Yes, Your Honor. And that depends on the fate of the Lopez decision with the en banc proceedings. So if the Court declines to apply exhaustion, the Court should wait for the en banc proceedings to resolve in Lopez. All right. Thank you very much. Thank you, Your Honor. The case of Nahid Amut. Do you have any rebuttal?  Briefly, Your Honor. I think that the Department of Justice position invites litigants, as Your Honor pointed out, to include every potential issue that is settled law that could potentially be changed by the Supreme Court within the intervening months and years in their case.  would be the one that would be required to do that. Well, there are a lot of cases that say that they should do just that. Understood, Your Honor. We're relying on the Alcarez case and specifically the fairness of having to overcome what's widely considered to be settled law in order to exhaust the claim. And we ask for remand in this case. If the Court has no further questions. No further questions. Thank you, counsel. Thank you, counsel, for the presentation. In the case of Nahid Amut vs. Barr. Thank you.
judges: Gould, Bea, Friedland